UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SADDLE MOUNTAIN MINERALS, L.L.C.,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF RICHLAND, a municipal corporation of the State of Washington,<br><br>　　　　　　　　　Defendant. | NO. 4:22-CV-5055-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No. 47). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, the completed briefing, and is fully informed. For the reasons discussed below, Defendant's Motion for Summary Judgment (ECF No. 47) is **GRANTED**.

## BACKGROUND

This case concerns a property dispute regarding an owner of mineral

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1  interests. ECF No. 1-1. On April 13, 2022, Plaintiff filed a Complaint and Land Use Petition in the Superior Court for Benton and Franklin Counties, alleging the following causes of action: (1) Land Use Petition under the Land Use Petition Act, RCW 36.70C, (2) Violation of Procedural Due Process under the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the Washington Constitution, (3) Violation of the Takings Clause of the Fifth Amendment to the United States Constitution and Article I, Section 16 of the Washington Constitution, and (4) Violation of 42 U.S.C. § 1983. *Id.* Defendant removed the action to this Court on April 29, 2022. ECF No. 1. Approximately one year later, on April 28, 2023, this Court dismissed Plaintiff's procedural due process claims. ECF No. 39.

On July 24, 2023, Defendant filed the present motion for summary judgment regarding the remaining three takings, LUPA, and Section 1983 claims. ECF No. 47. The parties timely filed their respective response and reply. ECF Nos. 52, 57. The following undisputed facts are incorporated from this Court's prior order dismissing the procedural due process claims. ECF No. 39 at 2-3.

In 1870, the federal government issued a patent to the Northern Pacific Railroad, later Northern Pacific Railway, to facilitate the building of a northern route across the country. ECF No. 19-1 at 1-2, ¶¶ 1-2. In 1970, the Northern Pacific Railway merged into Burlington Northern Railroad Company. *Id.*, ¶ 3. In

1  1988, Burlington Northern severed the rights in its land three ways. *Id.*, ¶ 4. On

2  June 28, 1998, Burlington Northern deeded oil and gas rights to Meridian Oil &

3  Gas Inc., deeded mineral rights to Meridian Minerals Company, and quitclaimed

4  rights to Glacier Park Company. *Id.*, ¶¶ 5-7. The oil and gas and mineral deeds

5  provided for the right to enter, occupy, use, consume, and control "surface of said

6  premises as may be necessary or useful for all such purposes." *Id.* at 2-3, ¶¶ 8-9.

7       On June 13, 1995, Meridian Oil & Gas and Meridian Minerals were merged

8  into Glacier Park. *Id.* at 4, ¶ 14. On October 1, 1995, Gary and Carol Maughan

9  purchased the mineral and oil and gas rights from Glacier Park. *Id.*, ¶ 15. Glacier

10 Park issued and recorded a corrective deed to the Maughans. *Id.*, ¶ 16. On May

11 18, 2000, the Maughans transferred the rights in the minerals and oil and gas deeds

12 to Saddle Mountain Minerals, LLC. *Id.*, ¶ 17.

13     The City of Richland reviews and grants permit applications authorizing

14 activities to surface owners on the land in which Plaintiff owns mineral interests.

15 *See id.* at 5-8, ¶¶ 22-44.

16                              **DISCUSSION**

17 **I.   Summary Judgment Standard**

18     The Court may grant summary judgment in favor of a moving party who

19 demonstrates "that there is no genuine dispute as to any material fact and that the

20 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling

on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**II.    Takings Claims**

Plaintiff raises takings claims under the U.S. Constitution and Washington

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 4

Constitution. The Court finds that Plaintiff has not established a takings violation under either the state or federal constitutions.[1]

The Takings Clause of the Fifth Amendment provides that private property shall not 'be taken for public use, without just compensation.'" U.S. Const. amend. V; *see also Chicago B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897) (making the Takings Clause applicable to the States through the Fourteenth Amendment). Two categories of takings give rise to an actionable claim under the Fifth Amendment: (1) a *per se* taking, where their property owner suffers a permanent physical invasion of the land or deprivation of all economically

---

[1] Defendant argues, convincingly, that Plaintiff's federal takings claim is likely time-barred. *See Honchariw v. County of Stanislaus*, No. 21-15801, 2022 WL 522287, at *2 (9th Cir. Feb. 22, 2022) (unreported), *cert. denied sub nom.*, 143 S. Ct. 97 (2022). However, the question of whether Plaintiff's state takings claim is similarly time-barred wades into murky state law precedent. *See* ECF Nos. 47 at 6, 52 at 4-5, 57 at 9-10 (debating the meaning of *Orion Corp v. State*, 109 Wash. 2d 621 (1987), *abrogated by Yim v. City of Seattle*, 194 Wash. 2d 682 (2019)). Rather than venturing into these choppy procedural waters, and in view of the fact that any state law takings clause analysis would track a federal takings claim analysis, the Court elects to resolve the issues on their merits.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 5

beneficial use of her property and (2) a *Penn Central* taking, named after *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978), which covers all other regulatory takings. *Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1188 (9th Cir. 2012). Plaintiff here asserts that Defendant's actions constitute a *per se* taking as well as a *Penn Central* taking. ECF No. 52 at 6-17.

    A.  *Per Se* **Physical Taking**

A physical taking occurs "when the government physically takes possession of property without acquiring title to it." *Cedar Point Nursery v. Hassid*, 594 U.S. ----, 141 S.Ct. 2063, 2071 (2021). The government may also effect a physical taking through occupation. *Id.* (giving the example of flooding caused by the construction of dam) (citing *United States v. Cress*, 243 U.S. 316, 327-28 (1917). "These sorts of physical appropriations constitute the 'clearest sort of taking,' and we assess them using a simple, *per se* rule: The government must pay for what it takes." *Id.* (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)). The seminal *per se* takings case is *Loretto v. Teleprompter Manhattan CATV Corp.*, where the New York City government appropriated a portion of a landlord's rooftop to install cable television access for tenants. 458 U.S. 419 (1982). Notably, "zoning laws do not constitute a taking, even though they affect real property interests." *Laurel Park Cmty., LLC*, 698 F.3d at 1188.

Plaintiff alleges that a *per se* takings has occurred because Defendant has

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6

1  authorized private landowners to develop atop its mineral estate; has constructed
2  various permanent improvements, including streets, on its mineral estate; and has
3  enacted a zoning code which prohibits mining.  ECF No. 52 at 9-11; *see also* ECF
4  No. 1-1 at 12, ¶ 50.

5    The Court agrees with Defendant that Plaintiff has not presented sufficient
6  evidence to establish a *per se* physical taking.  At the outset, the Court observes
7  that Richland's zoning scheme proscribes mining, and that the code extends to the
8  centerline of city roads and streets.  *See* Richland Municipal Code (RMC) §§
9  23.22.030, 23.08.050.  Thus, even were it not for the existence of public permanent
10 improvements or other private landowner developments, Plaintiff would not be
11 able to engage in its desired mining activities.  *See* ECF No. 1-1 at 6, ¶ 23; *see also*
12 *Laurel Park Cmty., LLC*, 698 F.3d at 1188.  Still, the Court considers Defendant's
13 related contentions.

14   Plaintiff's argument that Defendant has impermissibly authorized private
15 landowners to develop atop its mineral estate is based on a misreading of *McKay v.*
16 *United States*, 199 F.3d 1376, 1382 (Fed. Cir. 1999).  In *McKay*, the owners of
17 mineral interests on land adjoining a Department of Energy nuclear weapons
18 research facility sued the United States and others, alleging, among other things,
19 that the installation of groundwater monitoring wells extending into their mineral
20 estate constituted a physical taking.  199 F.3d at 1379.  The court of appeals

1  reversed the trial court's grant of summary judgment for the government,
2  explaining that undisputed evidence indicating that monitoring wells intruded into
3  the mineral estate constituted evidence of a physical taking. *Id.* at 1381. In so
4  finding, the court noted that while the applicable state law of Colorado
5  "suggest[ed] some leeway exists between a mineral estate owner and an owner of
6  the overlying surface estate," it would "not read the [state] cases to require a
7  mineral estate owner to submit to the drilling of multiple wells reaching into the
8  underlying mineral interests for a period of years." *Id.* at 1382.
9      In this case, individual landowners and Defendant made surface-level
10 improvements rather than running underground interferences as the *McKay*
11 defendants did. Plaintiff, nevertheless, maintains that its case is comparable to
12 *McKay* because its mineral rights "extend to the surface." ECFs No. 52 at 10; *see*
13 *also* 48-1 at 26; 48-6 at 31. That contention implies a misunderstanding of
14 Washington law. Even assuming for purposes of summary judgment that
15 Plaintiff's ownership of the minerals indeed extends to the surface, state law
16 permits landowners to lawfully develop their surface parcels for subjacent support.
17 Not coincidently, support for this proposition comes from two other cases
18 involving Plaintiff: *Saddle Mountain Mins., L.L.C. v. Joshi*, 152 Wash.2d 242
19 (2004) (hereinafter *Joshi*) and *Saddle Mountain Mins., L.L.C. v. Santiago Homes,*
20 *Inc.*, 146 Wash. App. 69 (2008) (hereinafter *Santiago Homes*). In *Joshi*, Plaintiff

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 8

1  sued the Joshis, a developer-landowner couple, for trespass and conversion.  152
2  Wash.2d at 242, 247.  Plaintiff argued it was aggrieved because, in the process of
3  developing the site, the Joshis had extracted sand and gravel from the surface of
4  Plaintiff's mineral estate and exported it to a different site off their property.  *Id.* at
5  249.  The state court determined that, despite the severed nature of the title to the
6  surface and the title to the mineral rights, the Joshis were lawfully entitled to
7  develop the surface of their land, even though that development might burden
8  Plaintiff.  *Id.* at 256.  The court qualified, however, that surface owners were still
9  required to compensate the mineral owner for the exportation on any minerals
10 removed.  *Id.*  As such, Plaintiff was entitled to compensation even though it could
11 not extract the minerals itself via mining.  *Id.*
12        Similarly, in *Santiago Homes*, the state court of appeals reversed a grant of
13 summary judgment for the defendant land developer because a genuine issue of
14 material fact had been raised regarding the exportation of materials from the
15 property.  149 Wash. App. at 78.  The court explained that landowners "can
16 develop the surface, but if they extract and export valuable sand and gravel,
17 payment must be made."  *Id.* at 76.
18        In light of this precedent, the Court cannot conclude that development of the
19 surface parcels by Defendant and individual landowners constituted a physical
20 taking.  Even extending the logic of *McKay* to the surface-level developments here

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9

1 does not support a takings claim because *Joshi* and *Santiago Homes* canonized the

2 principle that surface owners of severed parcels in Washington have a legal right to

3 develop their land, even if it burdens a mineral owner's right.  *Joshi*, 152 Wash. 2d

4 at 256.  Accordingly, Plaintiff cannot argue that the development of those parcels

5 constituted a *per se* taking.  Further, no evidence here has been presented that the

6 minerals disturbed were exported from the subject land, and such a claim, if it

7 existed at all, would fit better under an action for trespass or conversion against the

8 individual surface parcel owners.

9    **B.**   ***Per Se* Regulatory Taking**

10    Plaintiffs may also stake a *per se* takings claim when a regulation deprives

11 them of "all economically beneficial or productive use of land."  *Lucas v. South*

12 *Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992).  In *Lucas*, the Supreme

13 Court held that "the government must pay just compensation for such 'total

14 regulatory takings,' except to the extent that 'background principles of nuisance

15 and property law' independently restrict the owner's intended use of the property."

16 *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (citation omitted).  *Per se*

17 regulatory takings claims are relatively rare, as they are necessarily "limited to 'the

18 extraordinary circumstance when *no* productive or economically beneficial use of

19 land is permitted.'"  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan.*

20 *Agency*, 535 U.S. 302, 330 (2002) (quoting *Lucas*, 505 U.S. at 1017) (emphasis in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 10

1 original). "Anything less than a 'complete elimination of value,' or 'a total loss' . . . would require the kind of analysis applied in *Penn Central*." *Id.* (quoting *Lucas*, 505 U.S. at 1019-20, n.8); *see infra* p. 12 (discussing Plaintiff's *Penn Central* claim).

Plaintiff presses that it can establish a claim under *Lucas* because the restrictions on mining deprive its mineral estate of all economically viable uses. ECF No. 52 at 6. Plaintiff notes that the regulations prohibit it from excavating, but do not bar owners of the surface estate from doing so. *Id.* at 7. Plaintiff further argues that its past uses of the mineral estate—which did not include the business of mining—are irrelevant and that it cannot lose its right to just compensation simply because it has not been developing the property to its highest use in the past. *Id.* at 8, n.2. Plaintiff also suggests that its past uses of the estate, which primarily included selling the rights to surface owners, *see* ECFs No. 48-9, 48-10, 48-11, will diminish due to the prohibition on mining, ECF No. 52 at 9.

The Court agrees with Defendant that Plaintiff cannot establish a *per se* regulatory takings claim because the minerals have intrinsic value outside their ability to be mined, as evidenced by Plaintiff's own conduct. As Plaintiff's dealings with surface parcel owners show, buyers had various extrinsic motives for uniting their surface and subsurface parcels even when the regulation forbidding mining was in effect. *See* ECFs No. 48-9, 48-10, 48-11. For example, surface

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1 owners who excavated and exported minerals in the process of their property
2 development were under threat of litigation from Plaintiff, who threatened to sue
3 them for mineral conversion and trespass. *See, e.g.*, ECF No. 48-10 at 3. As the
4 *Joshi* opinion indicated, these damages for conversion and trespass existed despite
5 the fact that Saddle Mountain could not itself extract the sand and gravel under the
6 ordinance. 152 Wash.2d at 254. Moreover, as Defendant discussed in a previous
7 motion on the admissibility of expert witness testimony, several buyers were
8 motivated by a desire to clear title to their land for purposes like subdividing. *See,*
9 *e.g.*, ECF No. 43-1 at 24-27. Thus, it does not follow that the restrictions on
10 mining deprive Plaintiff of all productive or economically beneficial use of its
11 land. *See Tahoe-Sierra*, 535 U.S. 302.

12     To the extent Plaintiff suggests it is prejudicial to allow surface owners to
13 excavate the land, that argument is rejected for the reasons given in the foregoing
14 discussion of *Joshi* and *Santiago Homes*. Land development for subjacent support
15 is legal under Washington law. Accordingly, Plaintiff has not established a *per se*
16 regulatory takings claim.

17     **C.**   *Penn Central* **Regulatory Takings Claim**

18     Plaintiff also asserts that it, in the alternative, it can establish *Penn Central*
19 takings claim. Plaintiffs may have a takings claim under *Penn Central* where a
20 "regulation goes too far" and does not fit within the parameters of a traditional *per*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 12

*se* taking claim. *Bridge Aina Le'a, LLC v. Land Use Comm'n*, 950 F.3d 610, 625 (2020); *see also id.* at 628 ("If a property retains any residual value [under *Lucas*] after the regulation's application, *Penn Central* applies.") (citation omitted). Although the Supreme Court has declined to articulate "any 'set formula'" for when an economic injury requires compensation, three factors emerged from the *Penn Central* decision. 438 U.S. at 124 (citation omitted). These factors require courts to consider: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Id.* The first and second factors are primary considerations. *Lingle*, 544 U.S. at 539; *see also Bridge Aina Le'a*, 950 F.3d at 636 ("[The third] factor is not alone a sufficient basis to find that a taking occurred.").

When evaluating the regulation's economic impact under the first factor, the court calculates the value of the property pre-deprivation with the value post-deprivation. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987). In determining the pre-deprivation value of the property, the court focuses on "the nature of the interference with rights in the parcel as a whole" rather than focusing on discrete segments of a parcel. *Id.* (citing *Penn Central*, 438 U.S. at 130-31); *see also Murr v. Wisconsin*, 582 U.S. 383, 397 (2017) (relevant considerations for determining pre-deprivation property value include "the

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13

treatment of the land under state and local laws; the physical characteristics of the land; and the prospective value of the regulated land."). This rule is commonly known as the "anti-piecemealing rule." *Heitman v. City of Spokane Valley*, CV-09-0070-FVS, 2010 WL 816727, at *3 (E.D. Wash. Mar. 5, 2010). Hypothetical economic results may not dictate the outcome of an economic impact assessment. *Bridge Aina Le'a*, 950 F.3d at 632. A small diminution in value will not support a takings claim. *Laurel Park Cmty.*, 698 F.3d at 1189.

Though the second factor measures interference with investment-backed expectations, courts do not unguardedly rely on a landowner's representation of their expectations. Instead, the court will analyze whether those expectations were objectively reasonable. *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 453 (9th Cir. 2018). In so doing, the court accounts for "the regulatory environment at the time of the acquisition of the property." *Bridge Aina Le'a, LLC*, 950 F.3d at 634.

Under the third factor, courts consider whether the action "amounts to a physical invasion or instead merely affects property interests through 'some public program adjusting the benefits and burdens of economic life to promote the common good.'" *Lingle*, 544 U.S. at 539. When a regulation singularly impacts an individual property owner, courts are more likely to find that the character of the action is impermissible. *Bridge Aina Le'a*, 950 F.3d at 636 ("[G]overnment

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

action that singles out a landowner from similarly situated landowners raises the specter of a taking.").

Defendant asserts that Plaintiff cannot prevail under the first *Penn Central* element because it has failed to provide any evidence about the pre-deprivation property value. ECF No. 47 at 9. Defendant further contends that the denominator parcel should be considered all of Plaintiff's property in Benton County, inclusive of property that falls outside the Richland city limits, or, minimally, the three parcels within the city limits (Sections 11, 25, and 27). *Id.* at 10-12.

The Court does not consider the parties' contentions regarding the size and included parcels of the underlying property because, in the first instance, Plaintiff has not established any pre-deprivation value of its properties as relevant to the claims asserted here. In a prior order, ECF No. 56, this Court excluded Plaintiff's expert's testimony regarding the value of the subject property because it was irrelevant. *See Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Plaintiff's remaining evidence of the property value comes from the testimony of Michael Maughan, an owner of Saddle Mountain Minerals. *See* ECF Nos. 48-5 (summary of Mr. Maughan's opinion testimony); 52 at 12. Mr. Maughan and Plaintiff maintain that "the economic impact of the City's actions is significant, over $28 million," ECF No. 52 at 12, and that "the mineral estate is

worth at least between $3,500 to $5,000 per acre," ECF No. 48-5 at 3. Even assuming that Mr. Maughan's testimony does not suffer from the same defect as the expert witness's testimony and accepting as true that the estate is indeed worth $3,500-$5,000 per acre, Plaintiff has not offered any contention regarding the value of the property pre-deprivation; that is, prior to the enactment or enforcement of RMC § 23.22.030's prohibition on mining. Accordingly, Plaintiff has not met the first *Penn Central* factor.

Defendant has also established that Plaintiff is unlikely to prevail under the second factor because the undisputed facts do not fairly suggest that Plaintiff ever objectively expected to be able to mine its interests. At the time Plaintiff acquired the property in 2000, Richland's zoning scheme prohibited mining, and as discussed above, there is no evidence that Plaintiff's ability to mine was a key condition of its disposition of its mineral estate to adjoining surface owners. *See* ECF Nos. 27 at 8-10, ¶¶ 27-31; 35 at ¶¶ 27-28; 30-31. As such, Plaintiff's claim fails under the second *Penn Central* factor.

The character of the regulation is also not akin to a traditional taking. As aforementioned, a central precept of federal Takings Clause jurisprudence is that zoning laws do not constitute a taking. *Laurel Park Cmty., LLC*, 698 F.3d at 1188.

Since there are no facts under which Plaintiff could meet the primary two *Penn Central* factors or establish a *per se* takings violation, the Court dismisses

Plaintiff's federal and state Takings Clause claims. *See Heitman*, 2010 WL 816727 at *4 ("Washington state courts have expressed an intent for a regulatory takings analysis to be consistent with the federal constitution."); *Yim v. City of Seattle*, 194 Wash.2d 651, 701-02 (2019).

**III.   Remaining Claims**

Plaintiff also brought a LUPA claim, but concedes that claim should be dismissed. ECF No. 52 at 21. Having previously dismissed Plaintiff's due process claims, ECF No. 39, and now having dismissed Plaintiff's takings claims, the Court also dismisses the related claim under Section 1983. ECF No. 1-1 at 17, ¶¶ 53-57.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment (ECF No. 47) is **GRANTED**.

2. All remaining motions are **DENIED as moot**, and all deadlines, hearings and trial are **VACATED**.

The District Court Executive is directed to enter this Order, enter judgment, furnish copies to counsel, and **CLOSE** the file.

DATED September 19, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17